**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**YLGA S. MCCANN**                                                                      **PLAINTIFF**

**V.**                                 **No. 4:24-CV-01078-BSM-ERE**

**SOCIAL SECURITY ADMINISTRATION,
COMMISSIONER**                                                              **DEFENDANT**

<u>**RECOMMENDED DISPOSITION**</u>

This Recommended Disposition ("RD") has been sent to United States

District Judge Brian S. Miller. You may file objections if you disagree with the

findings and conclusions set out in the RD. Objections should be specific, include a

factual or legal basis, and be filed within fourteen days. If you do not object, you

risk waiving the right to appeal questions of fact, and Judge Miller can adopt this

RD without independently reviewing the record.

**I.      Background**

On August 27, 2021, Ms. Ylga McCann filed an application for disability

insurance benefits and supplemental security income due to depression, anxiety,

chronic back pain, degenerative arthritis (lower back, fingers, and knees), trigeminal

neuralgia, migraines, heel spurs, and sciatica. *Tr. 29, 242, 251, 282*.  Her claim was

denied initially and upon reconsideration. An Administrative Law Judge ("ALJ")

held a telephonic hearing, where Ms. McCann appeared with her lawyer, and the

ALJ heard testimony from Ms. McCann and a vocational expert ("VE"). *Tr. 49-72*.

1

Ms. McCann amended her alleged onset date of disability to April 15, 2021. *Tr. 29, 52*. The ALJ issued a decision on September 18, 2023, finding that Ms. McCann was not disabled. *Tr. 29-42*. The Appeals Council denied her request for review, making the ALJ's decision the Commissioner's final decision. *Tr. 1-3*.

## II.    The ALJ's Decision[1]

The ALJ found that Ms. McCann had not engaged in substantial gainful activity since her alleged onset date. *Tr. 32*. The ALJ also concluded that Ms. McCann has the following severe impairments: degenerative disc disease, post spinal surgery; degenerative joint disease, post bilateral knee arthroplasty; migraines; morbid obesity; depressive disorder; anxiety disorder; and post-traumatic stress disorder. *Tr. 32*. The ALJ concluded that Ms. McCann did not have an impairment or combination of impairments that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Tr. 32-35*.

According to the ALJ, Ms. McCann had the residual functional capacity ("RFC") to perform light work, with the following limitations: (1) occasional kneeling, crouching, crawling, and climbing of ladders, ropes, or scaffolds; (2) no

---

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)(4).

exposure to unprotected heights, moving machinery, or open flames; (3) only simple, routine, and repetitive tasks involving only one or two steps; (4) only simple, work-related decisions; (5) occasional interaction with supervisors, coworkers, and the public; and (6) only simple and routine changes where the changes are few and infrequent. *Tr. 35.*

In response to hypothetical questions incorporating the above limitations, the VE testified that a substantial number of potential jobs were available in the national economy that Ms. McCann could perform. *Tr. 41, 70-71.* Accordingly, the ALJ found that Ms. McCann was not disabled. *Tr. 42*.

## III.    Discussion

### A.    Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and determine whether the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence" in this context means "enough that a reasonable mind would find [the evidence] adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015).

The Court will not reverse the Commissioner's decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

**B.     Ms. McCann's Arguments for Reversal**

Ms. McCann contends that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in: (1) not including limitations in the RFC related to migraine headaches; and (2) evaluating the medical opinion of state agency consultant Dr. Bradley Stephan. *Doc. 8 at 9-23*. After carefully reviewing the record, I recommend reversing the Commissioner's decision and remanding this case.

**C.     Analysis**

**1.     Migraine Headaches**

Ms. McCann argues that despite finding her headaches were a severe impairment, the ALJ failed to assign any limitations in the RFC to account for the impact of her migraine headaches. *Doc. 8 at 11-15*. She maintains that the ALJ's justifications for not including migraine-related limitations—that she showed "no neurological deficits" and that her symptoms had improved with medication—were invalid. *Id. at 11*. Ms. McCann asserts that substantial evidence in the record documented that she had daily debilitating headaches accompanied by dizziness,

nausea, and sensitivity to both sound and smell, and that the ALJ erred in neglecting to include any limitations in the RFC related to her severe migraines. *Id. at 12*.

The record contains many instances of Ms. McCann reporting headache pain during the relevant period. *Tr. 795, 823, 834, 850, 856, 919*. On October 27, 2022, she saw Dr. Edward Mendoza at Baptist Health Neurology Clinic complaining of constant, everyday migraine headaches. *Tr. 982*. She said that her headaches had existed for years but had worsened in the last four months. *Tr. 984*. She described her pain as "stabbing," "behind the eyes . . . to the temple area back of the head," and "sharp and squeezing with a throbbing component." *Tr. 919, 984*. Dr. Mendoza noted that Ms. McCann may "have a medication induced headache." *Tr. 990*. He ordered an MRI, prescription for Inderal (propranolol), and a follow-up appointment in three months.[2] *Id*. The MRI results showed no abnormalities and a "normal examination of the brain." *Tr. 991-92*.

In an October 2021 headache questionnaire, Ms. McCann reported that she had daily headaches caused by stress, smells, noise, and pain. *Tr. 305*. She listed ibuprofen as her medication, and she noted that she would go into a dark room with no noise when she had a headache. *Tr. 306*. In a follow-up questionnaire in June

---

[2] The record does not include documents related to a follow-up appointment with Dr. Mendoza.

2022, Ms. McCann sated that gabapentin helped "ease" her pain so she could "lift [her] head." *Tr. 340.*

At the August 9, 2023 hearing, Ms. McCann testified that she had migraines every day. *Tr. 62.* She stated that her headaches made her sensitive to light and sound; caused visual disturbances; and made her dizzy and nauseous. *Tr. 62-63.* She took propranolol and gabapentin for her headache pain. *Tr. 63.* She also testified that "[s]ometimes [the propranolol and gabapentin] don't help so I'll take Excedrin to kind of, I don't know if I could say ease, kind of ease, coat the pain. It's still there, but it's – it doesn't – it's not all out." *Id.* When she has a headache, she retires to a dark room with no light, no sound, and no television. *Tr. 64.* She uses both ice and heating packs to treat her headaches. *Id.* When asked how long a headache typically lasts, she said that it "stays at its max intensity, but if I take . . . Excedrin or Advil it kind of makes it bearable, if I can say that. It's not gone. I know it's not gone, but I can lift my head up. And if I can lift my head up off the pillow and not be nauseated, it kind of is coated, but still there, if I could say it like that." *Id.*

In his decision, the ALJ recognized that Ms. McCann "complained of almost daily headaches" but found that "there were no neurological deficits, and she stated her symptoms were improved with medication." *Tr. 40.* As far as activities of daily living, the ALJ noted that Ms. McCann indicated she could prepare simple meals, do laundry, clean her bathroom, tend to her personal care, shop for groceries, and

drive. *Id*. Although the ALJ found that Ms. McCann could perform light work with certain postural and environmental limitations, the ALJ did not include any of the environmental limitations typically associated with severe migraines, such as the need to avoid loud noise, bright or flashing lights, industrial fumes, or extreme temperature changes. The ALJ noted that the RFC was "generally consistent or more restrictive than the findings of two State agency medical consultants and none of her own providers further limited her ability to work." *Id*.

Ms. McCann bears the burden of proving her RFC, which represents the most she can do despite the combined effects of her credible limitations. *Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019); 20 C.F.R. §§ 404.1545, 416.945(a)(1). "It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own descriptions of [her] limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Here, the ALJ found that Ms. McCann's migraine headaches were severe, but failed to account for this severe impairment in the RFC or sufficiently explain why no additional restrictions were required.

By definition, a severe impairment is one that significantly limits a claimant's ability to engage in basic work activities. *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011). "A finding that an impairment is severe cannot square with a conclusion

7

that it imposes no limitations. It is axiomatic that a severe impairment imposes limitations, and an impairment that imposes no limitations is not severe." *Pickens v. Berryhill*, No. 4:18-cv-00212-JLH-BMD, 2019 WL 1219707, at \*2 (E.D. Ark. Mar. 15, 2019), adopted, 2019 WL 1449618 (E.D. Ark. Apr. 1, 2019). An ALJ may demonstrate consideration of a limitation by expressly considering evidence of that limitation and discussing the persuasiveness of that evidence. See *Igo v. Colvin*, 839 F.3d 724, 730 (8th Cir. 2016).

Because the ALJ found that Ms. McCann's migraine headaches significantly limited her ability to work, the ALJ should either have provided a corresponding accommodation for it in the RFC or sufficiently explained why one was not necessary. The Commissioner argues that the ALJ did accommodate Ms. McCann's migraine headaches by limiting her to light, simple work with no exposure to hazards. *Doc. 10 at 5*. But the ALJ's written decision does not support the Commissioner's position. Rather, the ALJ limited Ms. McCann to light work with some postural and environmental limitations because she had "tenderness and diminished range of motion in her lumbar spine . . . also tenderness in her cervical spine." *Tr. 39*. There is no indication that the ALJ assigned any limitations due to Ms. McCann's severe headaches. Each time the ALJ discussed Ms. McCann's complaints of daily headaches, the ALJ gave the same qualification—she had no neurological deficits, and her headaches improved with medication. *Tr. 39, 40*. It is

unclear whether the ALJ gave any consideration to Ms. McCann's complaints of nausea, dizziness, and sensitivity to both sound and odors. The ALJ simply did not address those complaints when assessing the RFC. It is the ALJ's duty to show his work. *Bishop v. O'Malley*, No. 4:24-cv-00243-LPR-ERE, 2024 WL 3842586, at *5 (E.D. Ark. Aug. 16, 2024), adopted, 2025 WL 796119 (E.D. Ark. Mar. 12, 2025). Because the ALJ failed to sufficiently explain why he assigned no limitations for an impairment he deemed severe, the ALJ's decision is not supported by substantial evidence, and remand is recommended.

## 2.    Dr. Bradley Stephan

Ms. McCann also contends that the ALJ erred by improperly rejecting the medical opinion of Dr. Bradley Stephan, a state agency consultant. *Doc. 8 at 18-22*. Dr. Stephan opined that Ms. McCann could work at the light exertional level, but she could only stand or walk for four hours in an eight-hour workday due to her bilateral knee replacement, low-back pain, and antalgic gait. *Tr. 39, 96*. Because I recommend reversing the Commissioner's decision for failure to properly consider Ms. McCann's migraine headaches in assessing her RFC, and the ALJ will need to reassess all the evidence on remand, the Court need not address this remaining argument.

## IV.    Conclusion

As set out above, and the ALJ's decision to deny benefits is not supported by substantial evidence.

IT IS THEREFORE RECOMMENDED that the Court reverse the Commissioner's decision and remand for further proceedings.

So Ordered 11 April 2025.

_____
UNITED STATES MAGISTRATE JUDGE